IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

|  |  |  |
|---|---|---|
| DANIEL TIZNADO RODRIGUEZ | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:15-cv-1639 |
| | ) | |
| | ) | |
| U.S. CITIZENSHIP & | ) | |
| IMMIGRATION SERVICES | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Cross Motions for Summary Judgment by the Plaintiff and the Defendant.

This case involves a request by Plaintiff Daniel Tiznado Rodriguez ("Plaintiff" or "Rodriguez") for this Court to review his application for naturalization pursuant to Section 310(c) of the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1421(c). Plaintiff is a citizen of El Salvador. On July 26, 1995, Plaintiff pled guilty to statutory burglary, in violation of Virginia Code § 18.2-91; a few months later, he was sentenced to three years imprisonment with two years and six months of the sentence suspended, conditioned on his successful completion of two years' probation.

On March 16, 1998, Plaintiff obtained lawful permanent resident ("LPR") status. Plaintiff then filed an N-400 Application for Naturalization on or about August 29, 2013. On November 15, 2013, Plaintiff appeared for an interview in conjunction with this application. On March 8, 2014, the United States Citizenship and Immigration Services ("USCIS") denied Plaintiff's N-400 application. In its decision, USCIS explained that Plaintiff's 1995 conviction for burglary qualified under the Immigration and Nationality Act ("INA") § 101(a)(43)(G), 8 U.S.C. § 1101(a)(43)(G), as a "theft or burglary offense for which the term of imprisonment is at least one year" — and therefore as an "aggravated felony" within the meaning of the INA. Because such aggravated felonies act as a permanent bar on an alien's ability to establish the good moral character necessary for naturalization, USCIS denied the application.

On or around April 8, 2014, Plaintiff filed an N-336 Request for a Hearing on a Decision in Naturalization Proceedings (*i.e.,* a request for administrative appeal of USCIS's initial decision). On June 3, 2015, USCIS issued a final agency decision denying Plaintiff's N-400 Application for Naturalization, on the grounds that his conviction permanently bars him from establishing two prerequisites for naturalization: (1) a showing of "good moral character," and (2) a demonstration that he "lawfully" obtained LPR status. On December 10, 2015, Plaintiff

2

filed the instant civil action, seeking judicial review of USCIS's denial of his naturalization application pursuant to 8 U.S.C. § 1421(c).

Subject to certain exceptions not applicable here, the INA provides that "[n]o person . . . shall be naturalized unless" they satisfy several requirements. INA § 316(a), 8 U.S.C. § 1427(a); see also United States v. Ginsberg, 243 U.S. 472, 475 (1917) ("No alien has the slightest right to naturalization unless all statutory requirements are complied with."). First, the applicant must have resided continuously in the United States for at least five years after being "lawfully admitted for permanent residence." INA § 316(a)(1), 8 U.S.C. § 1427(a)(1); see also 8 C.F.R. § 316.2(a). Second, the applicant must have "resided continuously within the United States from the date of the application [for naturalization] up to the time of admission to citizenship." 8 U.S.C. § 1427(a)(2). Third, "during all the periods referred to in this subsection," the applicant must demonstrate that he "has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States." Id. § 1427(a)(3).

With respect to the "good moral character" requirement, Congress has provided a non-exhaustive statutory definition, which includes a list of those classes of individuals who are

3

precluded from establishing that they possess the requisite good moral character for naturalization. See 8 U.S.C. § 1101(f). As relevant here, among such persons are those who have been convicted of an "aggravated felony," as defined by the INA. 8 U.S.C. § 1101(f)(8) ("No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was one who at any time has been convicted of an aggravated felony (as defined in subsection (a)(43) of this section)."); see also 8 C.F.R. § 316.10(b)(1)(ii). And, as further relevant here, the INA includes among such disqualifying "aggravated felonies" any "theft offense ... or burglary offense for which the term of imprisonment [is] at least one year." INA § 101(a)(43)(G), 8 U.S.C. § 1101(a)(43)(G).

Per the terms of the INA, "any reference to a term of imprisonment or a sentence with respect to an offense is deemed to include the period of incarceration ordered by a court of law regardless of any suspension of the imposition or execution of that imprisonment in whole or in part." INA § 101(a)(48)(B), 8 U.S.C. § 1101(a)(48)(B).

In determining whether a state conviction qualifies as an "aggravated felony" as defined by the INA, both USCIS and the Court follow the so-called "categorical approach" to "determine whether the state offense is comparable to an offense listed in

4

the INA." Etienne v. Lynch, 813 F.3d 135, 143 (4th Cir. 2015)

(noting that "[a]lthough the categorical approach was first

introduced in the context of criminal law, it 'has a long

pedigree in our Nation's immigration law.'") (quoting Moncrieffe

v. Holder, 133 S. Ct. 1678, 1685 (2013)).

> Under this approach, the Court
>
> 'consider[s] only the elements of the [state] statute
> of conviction rather than the defendant's conduct
> underlying the offense,' and compare[s] them with the
> elements of the 'generic' [federal] crime. If the
> comparison shows that the state offense 'has the same
> elements as the generic INA crime, then the prior
> conviction constitutes an aggravated felony.' If,
> however, the state offense 'sweeps more broadly ...,
> the prior conviction cannot count as an aggravated
> felony.'

Id. at 142 (quoting Omargharib v. Holder, 775 F.3d 192, 196 (4th

Cir. 2014)).

Where the state offense is defined more narrowly than the

'generic' federal crime, the state conviction will also qualify

as the generic offense. Descamps v. United States, 133 S. Ct.

2276, 2281 (2013).

In certain instances, however, the Court may (and indeed,

must) go beyond the categorical approach, and apply a "modified

categorical approach," which is best understood as a "tool for

implementing the categorical approach." Id. at 2284.

Specifically, when a state criminal offense is "divisible,"

meaning that it "sets out one or more elements of the offense in

5

the alternative," a court may "consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction." Id. at 2284; see also Shepard v. United States, 544 U.S. 13, 26 (2005) (acceptable documents that a Court may consult for these purposes include "the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information"); Mondragon v. Holder, 706 F.3d 535, 547 (4th Cir. 2013) (applying the modified categorical approach to the analysis of whether a particular crime is an "aggravated felony" within the meaning of the INA).

In order to seek naturalization, an alien must first file a form application (N-400) with USCIS. See 8 U.S.C. § 1445(a); see also 8 C.F.R. § 316.4(a). USCIS then conducts an examination of the applicant's qualifications for naturalization, Id.; § 1446(b), and ultimately "make[s] a determination as to whether the application should be granted or denied, with the reasons therefor," Id.; § 1446(d).

If USCIS initially denies an application for naturalization, the applicant may request a hearing with the agency about the application. See 8 U.S.C. § 1447(a); see also 8 C.F.R.

§ 316.14(b)(2). If USCIS issues a final agency decision denying the application after this appellate hearing, the applicant may then file a civil action in federal district court, seeking de novo review of the agency's decision. See 8 U.S.C. § 1421(c); 8 C.F.R. § 336.9.

"[T]he burden is on the alien applicant to show his eligibility for citizenship in every respect," I.N.S. v. Pangilinan, 486 U.S. 875, 886 (1988), and "any doubts regarding an applicant's eligibility for naturalization 'should be resolved in favor of the United States and against the claimant,'" Nesari v. Tayolor, 806 F. Supp. 2d 848, 863 (2011) (quoting Berenyi v. Dist. Dir., INS, 385 U.S. 630, 637 (1967)); see also 8 C.F.R. §§ 310.10(a); 316.2(b).

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if the pleadings and evidence before the Court show no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is not a "disfavored procedural shortcut, but rather [an] integral part of the Federal Rules ... which are designed to 'secure the just, speedy, and inexpensive determination of every action.'" Id. While the Court will view the facts and inferences drawn in the light most favorable to the nonmoving party, the party opposing

7

the motion for summary judgment must put forth specific facts showing a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[I]t is ultimately the nonmovant's burden to persuade us that there is indeed a dispute of material fact. It must provide more than a scintilla of evidence—and not merely conclusory allegations or speculation—upon which a jury could properly find in its favor." Design Res., Inc. v. Leather Indus. Of Am., 789 F.3d 495, 500 (4th Cir. 2015) (citations and quotations omitted).

The parties do not dispute the material facts in this case. The instant action presents a question of law that is amenable to disposition on summary judgment. See Phan v. Holder, 722 F. Supp. 2d 659, 661 (E.D. Va. 2010) ("Where ... the facts are not materially disputed, summary judgment is the appropriate vehicle for review of USCIS's decision."), aff'd, 667 F.3d 448 (4th Cir. 2012). The threshold issue in this case is whether Plaintiff's burglary conviction qualifies as an aggravated felony within the meaning of INA § 101(a)(43), 8 U.S.C. § 1101(a)(43), and thus bars him from meeting this prerequisite to naturalization.

As a preliminary matter, the Defendant does not dispute that the statute under which Plaintiff was convicted of statutory burglary is not a "categorical match" with the generic federal definition of burglary. "[T]he generic, contemporary meaning of burglary contains at least the following elements: an unlawful or

8

unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." Taylor v. United States, 495 U.S. 575, 598 (1990); see also United States v. Avila, 770 F.3d 1100 (4th Cir. 2014).

In comparison, the version of the Virginia code under which Plaintiff was convicted provided as follows:

> 18.2-90 – Entering dwelling house, etc., with intent to commit murder, rape or robbery.
>
> If any person in the nighttime enters without breaking or in the daytime breaks and enters or enters and conceals himself in a dwelling house or an adjourning, occupied outhouse or in the nighttime enters without breaking or any time breaks and enters or enters and conceals himself in any office, shop, manufactured home, storehouse, warehouse, banking house, or other house, or any ship, vessel or river craft or any railroad car, or any automobile, truck or trailer, if such automobile, truck or trailer is used as a dwelling or place of human habitation, with intent to commit murder, rape or robbery, he shall be deemed guilty of statutory burglary, which offense shall be a Class 3 felony. However, if such person was armed with a deadly weapon at the time of such entry, he shall be guilty of a Class 2 felony.

Va. Code § 18.2-90 (1995). In addition:

> 18.2-91 – Entering dwelling house, etc., with intent to commit larceny, assault and battery or other felony.
>
> If any person commits any of the acts mentioned in § 18.2-90 with intent to commit larceny, assault and battery or any felony other than murder, rape or robbery, he shall be guilty of statutory burglary, punishable by confinement in a state correctional facility for not less than one or more than twenty years or, in the discretion of the jury or the court trying the case without a jury, be confined in jail for a period not exceeding twelve months or fined not more than $2,500, either or both. However, if the

person was armed with a deadly weapon at the time of
such entry, he shall be guilty of a Class 2 felony.

Va. Code § 18.2-91 (1995).

As USCIS explained in its final administrative decision, a
categorical comparison of the 1995 version of the Virginia code
with the federal generic offense does not result in a
categorical "match" because, inter alia, with respect to "the
second element in the generic definition, a 'building or
structure,' Virginia Code section 18.2-90 includes not just
entering a building or structure, but also entering a 'ship,
vessel or river craft or any railroad car, or any automobile,
truck or trailer.'" see also United States v. Foster, 662 F.3d
291, 293 (4th Cir. 2011). Accordingly, the analysis proceeds to
the modified categorical approach, as set forth above.

As explained, the modified categorical approach is a "tool
for implementing the categorical approach" where the prior
conviction in question is for violating a "divisible" statute –
that is, a statute that "sets out one or more elements of the
offense in the alternative." Descamps, 133 S. Ct. at 2281, 2284-
85. Plaintiff does not dispute that the Virginia burglary
statute is divisible, such that the modified categorical approach
properly applies here. In fact, the Fourth Circuit has already
applied this approach to exactly this statute. See Foster, 662
F.3d at 294-96. Plaintiff does, however, contend that USCIS

10

improperly relied on Plaintiff's Pre-Sentence Report ("PSR") for his burglary offense in conducting this analysis.

First, a court may only consult a "limited class of documents" in conducting a modified categorical analysis, Descamps, 133 S. Ct. at 2281. In describing the types of documents that may properly be consulted in the context of a modified categorical analysis, the Supreme Court has both listed certain documents that are presumptively relevant and appropriate, and expressly left the door open to the use of other, non-enumerated documents. See Shepard v. U.S., 544 U.S. 13, 26 (2005) (acceptable documents include "the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or ... *some comparable judicial record of this information*") (emphasis added).

Second, the Fourth Circuit has previously disclaimed the use of a PSR in a modified categorical analysis, but the Fourth Circuit did not so categorically, but rather only on an as-applied basis. United States v. Boykin, 669 F.3d 467, 471 (4th Cir. 2012). Boykin held that the relevant question is "whether the facts detailed in the PSR 'bear the earmarks of derivation from Shepard-approved sources.'" Id. (quoting United States v. Thompson, 421 F.3d 278, 285 (4th Cir. 2005)). This means that the facts contained in the document in question "are considered to

11

be facts about the conviction [it]sel[f]." Id. (citing Shepard,
544 U.S. at 26); see also United States v. Gillikin, 422 F. App'x
288, 289-90 (4th Cir. 2011) (holding that the district court
"'was entitled to rely upon the [PSR] because it bears the
earmarks of derivation from Shepard-approved sources...'")
(quoting Thompson, 421 F.3d at 285).

Here, the facts in question, which are contained in the
Plaintiff's PSR, and upon which USCIS relied in conducting its
modified categorical analysis, are taken from Plaintiff's own
written statement, labeled in the PSR as "Offender's Version":

> I was drinking with some friends. I drank about 12
> beers and got drunk. My friend said let's go and check
> inside the house. One the windows was open so I went
> inside and looked around and saw a purse on top of the
> table and took the purse with me and took $7.00 out of
> the purse and left everything in the bushes including
> the purse. And I left. Then we went to the next house
> but the window was closed.
>
> I was 19 years old. Just started drinking and now I
> feel real bad because I can't believe I did this. I
> have a family now and I know how dangerous this is
> because I would never like it if someone did this to
> me. I would understand how unsafe they would feel
> because of my mistake.

In contrast, the PSR that was disapproved in Boykin
contained an "account" of the offender's crime that was prepared
by a probation officer, by reference to unidentified factual
sources. See Boykin, 669 F.3d at 468-69.

Nothing in Boykin suggests that it is improper for a
district court (or agency) to rely on an offender's own written

statement regarding the facts of his crime, as USCIS did here, in conducting a modified categorical analysis. USCIS properly relied on Plaintiff's PSR in conducting its modified categorical analysis of his burglary conviction.

As noted above, "the generic, contemporary meaning of burglary contains at least the following elements: (1) an unlawful or unprivileged entry into, or remaining in; (2) a building or other structure; (3) with intent to commit a crime." Taylor, 495 U.S. at 598. Thus, to satisfy the modified categorical approach, the relevant documents must demonstrate that the version of Virginia statutory burglary matches these three elements. Descamps, 133 S. Ct. at 2281.

With respect to the first element of this crime, "unlawful or unprivileged entry," Plaintiff's conviction was for the "breaking and entering" component of the Virginia statute, which necessarily entails an unlawful or unprivileged entry. Id., at 2293. Further, Plaintiff's statement makes plain that he entered a home, which qualifies as a "building or other structure" and thus satisfies the second element of the federal offense. Finally, Plaintiff's conviction inherently satisfies the third element of the federal offense, "with intent to commit a crime," because Virginia Code section 18.2-91 is narrower that the federal crime.

Accordingly, USCIS properly determined that under the modified categorical approach, Plaintiff's burglary conviction qualifies as a "theft or burglary offense" within the meaning of INA § 101(a)(43)(G), 8 U.S.C. § 1101(a)(43)(G), and thus as an "aggravated felony" that is *per se* disqualifying for naturalization. Further, following with Pangilinan and Nesari, Plaintiff carried the burden to show his eligibility for citizenship, and failed to meet that burden here.

Plaintiff's application further fails because he cannot demonstrate that he properly obtained LPR status, and therefore also cannot demonstrate that "he has been lawfully admitted to the United States for permanent residence in accordance with all applicable provisions" of the INA, as required for naturalization. INA § 318, 8 U.S.C. § 1429. Under the plain terms of the INA, an alien convicted of a Crime Involving Moral Turpitude ("CIMT") is legally barred from adjusting his status to LPR. INA § 245(a), 8 U.S.C. § 1255(a); see also INA § 212 (a)(2), 8 U.S.C. § 1182(a)(2).

The burden was on the Plaintiff to demonstrate that his burglary conviction did not qualify as a CIMT. 8 U.S.C. § 1361; see also, Abderdeen v. Holder, 392 F. App'x 207, 208 (4th Cir. 2010). In meeting this burden, neither of the exceptions set forth in § 212(a)(2)(A)(ii)(I)-(II), 8 U.S.C. § 1182(a)(2)(A)(ii)(I)-(II), could have applied to Plaintiff, as

14

(1) he was over 18 years of age at the time he committed his offense; (2) the maximum sentence available for Virginia burglary exceeds one year; and (3) Plaintiff was sentenced to more than six months.

INA § 318 provides that "no person shall be naturalized unless he has been *lawfully admitted* to the United States for permanent residence *in accordance with all applicable provisions*" of the INA. 8 U.S.C. § 1429 (emphasis added); see also INA § 101(a)(20), 8 U.S.C. 1101(a)(20) (defining "lawfully admitted for permanent residence" as "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws").

Thus, it was Plaintiff's burden, in applying for naturalization, to demonstrate that he had "lawfully" adjusted his status, which, in his case, includes a burden to demonstrate that he had *not* been convicted of a CIMT at the time of adjustment. Salem v. Holder, 647 F.3d 111, 116 (4th Cir. 2011); Nesari, 806 F. Supp. 2d at 867. The question then becomes whether Plaintiff met this burden.

In order to qualify as a CIMT in the Fourth Circuit, a crime must "violate[] a moral norm and thus give rise to 'turpitude'— meaning the debasement of the norm or the value ... "[M]oral turpitude' refers generally to conduct that shocks the public

15

conscience as being inherently base, vile, or depraved." <u>Mohamed</u> <u>v. Holder</u>, 769 F.3d 885, 888 (4th Cir. 2014) (internal citations omitted). Virginia burglary does not categorically *exclude* CIMTs from its definition, and Plaintiff does not contend otherwise. <u>See</u> <u>generally</u> <u>Hernandez v. Holder</u>, 783 F.3d 189 (2015). Because Plaintiff does not meet the burden of proving his conviction did not qualify as a CIMT, he cannot demonstrate that his adjustment to LPR status was "lawfully" obtained.

For the foregoing reasons, Defendant's Motion for Summary Judgment should be granted.

An appropriate order shall issue.


CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
May 16, 2016